UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No. 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE

### UNITED STATES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Pursuant to this Court's Order of June 27, 2024, Doc. 56, the United States submits this supplemental memorandum in support of its motion for a protective order sought under Rule 16(d)(1) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3771, the Crime Victims' Rights Act ("CVRA"). Doc. 33. Therein, the United States requests that reasonable safeguards be established in this case to protect certain discoverable items and information, namely contraband or fruits of the crimes charged against Burke.[1] As explained below, Burke, charged with conspiracy and related substantive violations of the Computer Fraud and Abuse Act ("CFAA") and the Wiretap Act, should be prohibited from having unsupervised access to and disclosing the fruits of his crimes. Indeed, disclosure by Burke of the fruits of his crimes would further injure the victims of the charged conduct and likely amount to additional criminal violations of the Wiretap Act.

---

[1] This Court has previously explained that it intended to enter a protective order safeguarding two categories of discoverable material, those being personal identifying information and intellectual property and trade secrets.

## I. Introduction

In early May 2023, a federal magistrate judge found probable cause and issued a lawful warrant to search Burke's residence for records and evidence relating to violations of the CFAA and the Wiretap Act.[2] Shortly thereafter, on May 8, 2023, FBI Special Agents executed that warrant and seized various electronic devices from Burke's residence that, among other information, contained items and information believed to be fruits of violations of the CFAA and the Wiretap Act. On that same day, FBI Special Agents in Washington executed a related warrant at the residence of Marco Gaudino.

A Middle District of Florida grand jury found probable cause and returned an indictment against Burke in February 2024, charging Burke with conspiracy and related substantive violations of the CFAA (18 U.S.C. § 1030(a)(2)(C)[3] and the Wiretap Act (18 U.S.C. § 2511(1)(a) and (c)).[4] Doc. 1. That finding of probable

---

[2] Shortly after the May 2023 search at Burke's residence, the Times Publishing Company ("The Times") initiated an action, requesting that the Court unseal the affidavit in support of the search warrant and other related documents. *See* Case No. 8:23-mc-00014-WFJ-SPF. While the affidavit in support of the search warrant remained sealed during the investigation leading to the indictment in this case, it has since been unsealed (with minor redactions). Case No. 8:23-mc-00014-WFJ-SPF, Doc. 57.

[3] The elements of a violation of 18 U.S.C. § 1030(a)(2)(C) are that: (1) the defendant intentionally accessed a computer without authorization; (2) when the defendant accessed the computer, the defendant obtained information therefrom; and (3) the computer accessed was a protected computer. *See* Eleventh Circuit Jury Instructions (Criminal), Instruction O42.2 (modified).

[4] In the Eleventh Circuit, the elements of a violation of § 2511(1)(a) are that: (1) the defendant intentionally intercepted or endeavored or procured another to intercept; (2) the contents of a wire, oral, or electronic communication; (3) the defendant did so by use of a device; and (4) the interception of the communication was contemporaneous with the transmission of the communication. 18 U.S.C. § 2511(1)(a); *and see United States v. Turk*, 526 F.2d 654, 658 (5th Cir. 1976); *United States v. Steiger*, 318 F.3d 1039, 1047-50 (11th Cir. 2003); *In re Pharmatrak, Inc. Privacy Litigation*, 329 F.3d 9, 18 (1st Cir. 2003). The elements of a violation 18 U.S.C. § 2511(1)(c) are that:

cause by a neutral arbiter must be accorded a presumption of regularity. *See United States v. Mechanik*, 106 S.Ct. 938, 944 (1986) (O'Connor J. concurring opinion). Following Burke's initial appearance, this Court entered a *Pretrial Discovery Order and Notice of Trial and Status Conference*, Doc. 27, regulating the discovery proceedings in this case.

The United States filed a motion for protective order under Rule 16(d)(1) and the CVRA on May 6, 2024, requesting, in part, that this Court enter an order limiting dissemination of certain discoverable materials, namely materials that contain PII, intellectual property of others, and/or contraband or fruits of the crime. Doc. 33. Following briefing by the parties, this Court held a hearing on June 27, 2024. Docs. 39, 51, and 52. Thereafter, the Court entered an order directing the parties to file supplemental memoranda concerning whether the defendant, during the pretrial discovery process, should be permitted to have unsupervised access to and publish certain items or fruits of the illegal conduct charged against him in this case. Doc. 56.

## II. The Charged Criminal Conduct

The charged conspiracy alleges that Burke and "Conspirator 2"— Marco Gaudino—utilized the Internet to secure credentials (usernames and passwords),

---

(1) the defendant intentionally disclosed; (2) an illegally intercepted communication; and (3) when the defendant did so, the defendant had knowledge or reason to know that the intercept was illegal. 18 U.S.C. § 2511(1)(c). While "knowledge or reason to know of the illegality is an element" of the crime, it is only necessary to establish that the defendant knew the relevant facts, not that the defendant understood the Wiretap Act well enough to know that the interception was unlawful. *See United States v. Wuliger*, 981 F.2d 1497, 1501 (6th Cir. 1992).

3

which had been issued to others with whom Burke and Gaudino had no affiliation, and from whom neither Burke nor Gaudino had received any authorization to possess or use. Doc. 1 at Count One, ¶¶ 22-23. Burke and Gaudino then repeatedly used those compromised credentials to gain unauthorized access into victim entities' protected computers, and scoured those computers for items and information they deemed desirable, which they obtained and stole for their own use. *Id*. The indictment includes an "overt act" direct message exchange between the conspirators in February 2022, during which Gaudino provided Burke with compromised credentials for a protected computer—an NSL FTP server—that the conspirators then used to repeatedly access that FTP server from which they obtained and stole folders and files. *Id*. at ¶ 23.a.-b. and Counts Two and Three. To demonstrate the alleged unlawful computer intrusions and theft of NSL property by Burke, the United States has provided to this Court redacted NSL system logs that reveal Burke's download activity from the NSL FTP server on two sample days (seven files downloaded February 21, 2022; 71 files downloaded September 14, 2022). Doc. 52-3.

      The charged conspiracy further alleges that Burke and Gaudino utilized one particular set of compromised credentials (belonging to StreamCo-Net broadcaster-customer NW-2) to repeatedly access without authorization a StreamCo-Net password-protected website from which they systematically obtained and stole sensitive information, including "StreamCo-Net BIDs and other proprietary information." Doc. 1 at ¶ 22.g.-h. Critically, the stolen StreamCo BIDs—unique

device identification numbers that functioned much like Social Security numbers—and proprietary information were component parts of valid StreamCo-Net preview feeds, which the conspirators then exploited to illegally intercept wire communications in real time as they were being transmitted across the StreamCo-Net by its broadcaster-customers. *Id.* at ¶ 22.g.-i., ¶ 23.i., and Counts Eight through Twelve.

The process worked liked this.[5] The StreamCo-Net platform allowed its broadcaster-customers to electronically record and transmit encoded high-resolution video content over the Internet. *Id.* at Count One, ¶¶ 8-12. The broadcaster-customers were relatedly offered a preview function through the StreamCo-Net password-protected website, which enabled the broadcaster-customers to access and preview their respective video transmissions in real time at a lower resolution for quality assurance and other business-related purposes. *Id.* Thus, once a StreamCo-Net broadcaster-customer logged into the StreamCo-Net website using valid credentials (a username and password) issued by StreamCo, that customer could preview its live video stream transmissions, but could not preview the video transmissions of other StreamCo-Net customers. The preview streams were embedded into the StreamCo-Net website from discrete uniform resource locators ("URLs"), each of which was composed of a lengthy string of letters, numbers, and symbols *and* a unique StreamCo-Net BID of 9 to 15 characters, generated by an

---

[5] The below explanation is consistent with the charged conduct and anticipated trial evidence in the United States' possession.

algorithm and assigned to the StreamCo device used by a particular customer to receive and decode its transmission(s). *Id*.

As noted above, however, Burke and Gaudino had only secured one set of (unauthorized) compromised credentials for StreamCo-Net broadcaster-customer NW-2, which was a restricted credential allowing access to only a limited number of NW-2 video transmission streams. *See Id*. at Count One, ¶¶ 9-12 and ¶ 23.d. And they wanted access to the video streams of more StreamCo-Net customers. To gain that broader (unauthorized) access to additional StreamCo-Net customers' video streams, the conspirators circumvented the established StreamCo-Net website authorization (login) process—limiting each customer's available preview feeds to video transmissions passing through that customer's decoder devices—and proceeded directly to those additional customers' URLs within the StreamCo-Net website, using two pieces of stolen information: (1) the master StreamCo-Net URL structure; *and* (2) the unique BID assigned to the particular device receiving and decoding the desired streamed transmission, as depicted below (master URL structure in blue; assigned BID in red).

> https://txxxxxail-us.[StreamCo].tv/xxxx/**[BID]\_XXXXXXXXXXX1671\_**
> InstanceX.stream/playlist.m3u8?streamXxx=**[BID]\_XXXXXXXXXX167\_**
> InstanceX[6]

---

[6] The unique BID was repeated twice within the URL structure and included an "Instance#" that typically ranged from 1 to 4. Upon discovering the conduct charged in this case, StreamCo conducted a damage assessment and modified its platform to prevent additional similar intrusions. Notwithstanding those modifications, the above example stream has been modified to include "X" or "x" in place of certain letters, numbers, or symbols contained in the actual URL, depicted here. The United States is amenable to submitting an unmodified version to the Court for its review should the Court so desire.

Assuming *arguendo* that Burke and Gaudino had somehow—other than by gaining unauthorized access to the StreamCo-Net website—known the master StreamCo-Net URL structure (which they did not) and had knowledge that the StreamCo device BIDs ranged from 9 to 15 characters (which they also did not), the approximate odds of the conspirators randomly guessing a valid BID and thereby being able to access and preview a particular StreamCo-Net customer's video transmission was 1 in 999,999,900,000,000.

    Of course, such odds were pragmatically insurmountable. However, what was achievable, and what the charged conspiracy and related substantive counts allege, is that conspirators Burke and Gaudino repeatedly used the NW-2 compromised credentials to access without authorization the StreamCo-Net password-protected website from which they obtained and stole information by exploiting aspects of the StreamCo-Net system design, including the master StreamCo-Net preview URL structure and the over 2,000 (otherwise unguessable) unique StreamCo BIDs that had been assigned to StreamCo-Net broadcaster-customers' decoder devices. *Id*. at Count One, ¶ 22.a.-g. and ¶ 23.e.1-7 and h.1-5. The conspirators then created and saved to their computers automated scripts that utilized the stolen master StreamCo-Net URL structure and the stolen unique StreamCo BIDs to intercept and monitor over 3,000 StreamCo-Net broadcaster-customer video transmissions in real time, recording more than 1000 video streams. *See, e.g., Id*. at Count One ¶ 23.f.-g. and i.1-5.

In other words, through their criminal conduct, Burke and Gaudino were able to view and hear anything that could be captured by the respective StreamCo-Net customers' cameras: they were positioned like the proverbial fly on the wall, surreptitiously peering out from the cameras and listening to private and workplace conversations and exchanges between employees and others who happened to be present. Critically, absent Burke and Gaudino's use of the compromised NW-2 credentials to gain unauthorized access of the StreamCo-Net password-protected website and their related thefts therefrom, it would have been statistically impossible for the duo to access the StreamCo-Net broadcaster-customers' preview function URLs and thereby intercept, monitor, and record their wire transmissions. Burke then "took steps to conceal that the intercepted [video communication streams] had been originally retrieved from the StreamCo-Net by, among other conduct, altering the appearance and metadata [of the video communications,]" and disclosed excerpts of certain video communications to others. Doc. 1 at ¶¶ 22.j.-k., 23.j.-k., and Counts Thirteen and Fourteen.

III.     **Fruits of the Charged Criminal Conduct**

As explained in the *United States' Motion for Entry of Protective Order and Incorporated Memorandum in Support* and related reply, Docs. 33 and 52, the United States' investigative team located on Burke's computer system several categories of contraband, or fruits of the charged criminal conduct. Said fruits of the charged criminal conduct included:

> (1) ***over 3,000 folders and files*** that were downloaded by Burke from a protected computer, namely an NSL FTP server, following Burke's repeated use of a compromised NSL (administrative level) credential to access that FTP server;
>
> (2) electronic information obtained and stolen from the StreamCo-Net password-protected website, following Burke's repeated unauthorized access of that website using compromised credentials, namely the stolen master StreamCo-Net URL structure and the ***over 2,000 (otherwise unguessable) unique StreamCo BIDs***: and
>
> (3) ***over 1,000 video files*** that contain all or part of apparent illegally intercepted and stolen wire communication streams of StreamCo-Net broadcaster-customers, via the manner and means alleged in the indictment.

Significantly, as noted above, the ***over 1,000 video files*** found on Burke's computer system contain illegally intercepted and stolen private and workplace conversations and exchanges between employees and others working in proximity to the StreamCo-Net customers' cameras. The United States has provided to this Court for its *in-camera* review two brief exhibits (Exhibits 4E and 4F), excerpted from ***two of the more than 1,000 video files***, one of which includes production team conversations and makeup applications to a news correspondent and another that reveals an off-camera conversation between a news correspondent and others participating in a Zoom meeting. Neither example was part of or included in any planned broadcast. Instead, the video stream transmissions were surreptitiously intercepted in real time by the conspirators while actively engaged in the charged criminal conduct.

In addition, the United States' investigative team also located folders and files on Burke's computer system that, based upon direct message exchanges between Burke and Gaudino and consistent with the factual basis acknowledged by Gaudino

9

in his plea agreement, Doc. 52-2, were apparently downloaded by Burke from another protected computer owned by TSN, a sports network, following Burke's use of compromised credentials—provided to him by coconspirator Gaudino—to access that TSN computer without authorization. Indeed, Gaudino has confirmed under oath during his plea hearing his participation and role in the conspiracy charged against Burke, including that "[Gaudino] was not employed by or otherwise associated with the NSL, TSN, StreamCo, StreamCo-Net, NW-1, or NW-2, and that he did not have authorization from any of the entities or associated credential holders to utilize the [identified compromised] credentials to access [those] entities' [listed] computers." Doc. 52-2 at 30.

**IV. Argument**

    A.    Burke should not be permitted unsupervised access to the contraband or fruits of the charged conduct nor allowed to publish pending trial.

This Court's Order directs the parties to file supplemental memoranda concerning whether defendant Burke, as part of the discovery process, should be permitted to have access to and publish "contraband or fruits of the identified crimes," namely the items or information illegally obtained through the conduct charged by the indictment. Doc. 56. The answer is no.

As explained above, the items and information at issue were originally seized from Burke's and Gaudino's residences during a federal criminal investigation pursuant to the execution of lawful search warrants upon findings of probable cause by federal magistrate judges. The grand jury has since found probable cause and

returned the indictment in this case. That indictment alleges that Burke conspired with Gaudino to violate the CFAA and the Wiretap Act and thereby located and obtained the contraband items and information, that being the items and information illegally obtained from third party victim entities' protected computers and the illegally intercepted wire communication streams that include the private and workplace conversations and exchanges of others who were unaware of the conspirators' surreptitious surveillance. The indictment also includes forfeiture allegations that specifically identify twenty devices seized from Burke's residence that facilitated and/or contained fruits of the charged conduct. Moreover, Gaudino has pleaded guilty and acknowledged his active role in the charged criminal conduct and has agreed to forfeit devices seized from his residence that were used to facilitate the conspiracy. See Doc. 52-2. Criminal defendants positioned like Burke and Gaudino have no property rights in the fruits of their crimes. It would be abhorrent to permit a defendant, such as Burke, unfettered access to the fruits of the charged conduct pending trial.

Indeed, such would be the case even if the relevant items and information were later deemed to have been seized unlawfully, which is not the case here. Whereas Fed. R. Crim. P. 41(g) permits a person aggrieved by an unlawful search and seizure of property to move for the property's return, the rule's advisory notes specifically exclude "contraband or instrumentalities of crime." *See* Fed. R. Crim. P. 41, Committee Notes on Rules—2009 Amendment. "Individuals have no property right in contraband materials, so contraband materials will not be returned to them

11

regardless of whether the initial seizure of such materials was improper or whether any person connected with the seizure was connected with crime." 68 Am. Jur. 2d, Searches and Seizures § 323; *Cf.* 18 U.S.C. § 983(d)(4) ("[N]o person may assert an ownership interest . . . in contraband or other property that it is illegal to possess.").

Thus, to prevail on a motion for return of property under Rule 41(g), the Ninth Circuit has explained:

> a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.

*United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987); *and see United States v. Gotti*, 244 F.Supp.2d 120, 124-25 (E.D.N.Y. 2003) (adopting Third Circuit application of Rule 41(g) [formerly, Rule 41(e)], and noting that burden is on the movant to show entitlement to property under a motion for a return of property made while criminal prosecution is pending); *and see United States v. King*, 2022 WL 875383 at *5 (S.D.N.Y. 2022) ("moving party bears the burden of demonstrating, by a preponderance of the evidence, that '(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended.'") (*quoting United States v. Pinto-Thomaz*, 352 F.Supp.3d 287, 311 (S.D.N.Y. 2018)); *see also* 3A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Crim. § 690 (4th ed.) ("On a motion to return the burden is on the moving party to show that he or she is entitled to lawful possession of the property.").

To permit Burke unsupervised access to the fruits of the charged criminal conduct—the files stolen from third parties and the illegally intercepted video streams—for his use pending trial at the expense and risk of further harm to the victims would be anathema to criminal jurisprudence, particularly the CVRA and applicable forfeiture statutes. The CVRA specifically recognizes that crime victims, such as the victims in this case have a "right to be reasonably protected from the accused[,]" namely Burke, pending trial. See 18 U.S.C. § 3771(a)(1). Said victims also have the right under the CVRA "to be treated with fairness and with respect for [their] dignity and privacy." 18 U.S.C. § 3771(a)(8) (emphasis added). Thus, courts routinely issue protective orders during the discovery phase of criminal proceedings to safeguard CVRA victims. *See, e.g., United States v. Torres*, 2020 WL 4500046 at *5-*6 (D. New Jersey 2020) (courts have applied rights under CVRA to find good cause to enter protective order, including to protect the privacy and dignity of victims); *and see United States v. Tsosie*, 2018 WL 2745114 at *4-6 (D. New Mexico 2018) (crime victims have right to be treated with fairness and respect for their dignity and privacy). Defendant Burke should not be permitted unsupervised access to the illegally intercepted private and workplace conversations and exchanges between the victim broadcasters' employees and others who happened to be interacting with those employees. Their privacy rights should be protected under the CVRA.

B. Disclosing the illegally intercepted video streams would amount to new criminal conduct.

As explained above, Burke is charged, in part, with conspiracy and related substantive counts stemming from his real-time interceptions of video transmission streams by use of a device, in violation of 18 U.S.C. § 2511(1)(a). Doc.1 at Count One and Counts Eight through Twelve. Given those pending charges, Burke's argument that he should be allowed to have unsupervised access to and publish the intercepted streams is nonsensical. Indeed, disclosure of the contents of one of the illegally intercepted streams would amount to new criminal conduct, in violation of 18 U.S.C. § 2511(1)(c), as is charged in Counts Thirteen and Fourteen of the pending indictment.

C. Value of the fruits of the crime in the marketplace should not weigh upon the decision to issue a protective order in this case.

During the June 27, 2024 hearing, this Court generally inquired as to the value of the above-described fruits of the charged criminal conduct. It is inarguable that Burke and Gaudino placed significant value on the items and information. After all, they conspired over an approximately 15-month period during which they demonstrated their perceived value of the fruits of the charged conduct by repeatedly gaining unauthorized access to the protected computers of third-party victims and downloading and saving to their respective computer systems thousands of folders and files and illegally intercepted and recorded wire communication streams that occupied terabytes of space on those systems. In addition, as reflected and charged in Counts Four and Thirteen, Burke intentionally accessed the StreamCo-Net

computer *for the purpose of commercial advantage and private gain*, and he intentionally disclosed an audio/video stream to another person, who likewise placed value on the stream.

Respectfully, however, the value in the marketplace of individual items of contraband or fruits of the criminal conduct found on and seized from Burke's[7] computer system does not give full consideration to the harmful impact of the charged criminal conduct on the victims to date and, potentially, in the future. Here, Burke has even crowed in a previous court filing, Doc. 44 at 7 (struck by Doc. 46), that his disclosure of one of the illegally intercepted wire communication streams caused economic harm to others, in that the disclosure was a purported "contributing factor" to an individual losing a significant contract and a decision by a broadcaster to fire an on-air show host. In addition, Burke is charged in Count Fourteen with disclosing an excerpt from one of the illegally intercepted video streams—an NW-1 stream—with a false and misleading caption, thereby demonstrating maleficence towards some of the victims.

Many of the illegally intercepted wire communications contain the personal and workplace communications and exchanges between the various victim broadcaster-customers' employees and others interacting with them. These employees and others are also victims of the charged conduct, as are their companies which inarguably place value on their brands and are held to account for the quality

---

[7] Like fruits of the charged criminal conduct were also found and seized by the United States from conspirator Gaudino's computer during the investigation leading to the indictment.

of their product. Burke should not be permitted to exploit his illegal surreptitious monitoring and interception of these victims. Burke simply has no property interest in the folders, files, or other electronic information stolen from the protected computers of third-party victims or in the illegally intercepted wire communications and he should not be permitted to possess and disclose the fruits of his crimes pending trial.

      D.      Burke's potential defense theories and arguments are not relevant at this pretrial stage to consideration of the United States' motion for protective order.

During the hearing on the United States' motion for protective order, Burke's counsel, consistent with Burke's second response in opposition to the motion for protective order, Doc. 51, repeated a smattering of red-herring defenses, including that Burke originally secured the StreamCo-Net website credential from "a source for Mr. Burke [who] directed him to an archived public website of WGNS Radio, where the radio station *had published a link to its live feeds*." *Id*. at 6. That baseless argument suggests that Burke innocently followed a public website's published link to enter the StreamCo-Net website. But that is not what is charged by the pending indictment because that is not what the existing evidence supports. Instead, the indictment alleges that conspirators Gaudino and Burke exchanged direct messages in August 2022, during which Gaudino provided Burke with compromised credentials to enter the StreamCo-Net website, without having been authorized by either the credential holder or StreamCo to use those credentials or to enter that website. *See* Doc. 1, Count One, ¶ 23.d.

The United States anticipates that Burke may raise the above and any number of other potential defenses to the charged conduct in the defendant's supplemental memorandum opposing the United States' motion for a protective order. Respectfully, while Burke will have the opportunity to raise defenses to the charges pending against him, such (baseless) arguments are not relevant at this point to consideration of the pending motion for protective order. As noted above, the grand jury has found probable cause and returned the pending indictment charging Burke with conspiracy to violate the CFAA and the Wiretap Act and related substantive counts. That finding deserves deference at this pretrial stage, while the parties engage in discovery and trial preparation.

**V.     Conclusion**

Wherefore, based on the above and pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure and the Crime Victims' Rights Act, the United States requests that this Court, upon a finding of good cause, grant the United States' motion for a protective order and enter the order previously submitted to the Court as Doc. 33-1. That proposed protective order will enable the defense to possess a forensically sound copy of Burke's computer system, as it existed on May 8, 2023, and to have access to all other discoverable materials for investigation and trial preparation purposes while maintaining necessary safeguards over discoverable

material that contains personal identifying information, intellectual property of others, and/or the contraband fruits of the charged criminal conduct.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   */s/Jay G. Trezevant*
        Jay G. Trezevant
        Assistant United States Attorney
        Florida Bar No. 0802093
        400 N. Tampa St., Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Email: jay.trezevant@usdoj.gov

        */s/Adam J. Duso*
        Adam J. Duso
        Assistant United States Attorney
        Florida Bar No. 1026003
        400 N. Tampa St., Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Email: adam.duso@usdoj.gov

U.S. v. TIMOTHY BURKE          CASE NO. 8:24-cr-00068-KKM-TGW

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the Defendant.

*/s/Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney