## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No.** |
|    **Plaintiff** | **8:24-CR-68-KKM-TGU** |
| **V.** | |
| **TIMOTHY BURKE,** | |
|    **Defendant** | |

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR *FRANKS* HEARING

Comes Now, Defendant, Timothy Burke, by and through the undersigned counsel, and moves to suppress the evidence seized pursuant to a warrant executed on the defendant's premises on March 8, 2023, and respectfully moves this Court for a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Suppression is required because the warrant was overbroad and amounted to an unconstitutional general warrant under the Fourth Amendment, it was not executed with "scrupulous exactitude" as required by law, it was an unreasonable intrusion into the First Amendment protected activities of a journalist engaged in gathering and disseminating newsworthy

<1>

information to the public, and because the affidavit presented to the Magistrate Judge contained misleading allegations of facts and law and material omissions of fundamental facts regarding the entities and alleged victims of the crimes, [1] and material misrepresentations regarding the facts underlying the cited offenses that, if known to the issuing court, would have negating a finding of probable cause.

## I.   Standard for *Franks* Hearing

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment if the affidavit supporting the warrant contains statements that are deliberately false or made with reckless disregard for the truth, and such statements are necessary to a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The rule in *Franks* also extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions "would have prevented a finding of probable cause." *Id.* at 1326-27 (quotation marks omitted). If the allegedly false material is set aside, and "there remains sufficient content in the warrant affidavit to support a finding of probable cause," the warrant is valid. *Id*. at 1326 (quoting *Franks*, 438 U.S. at 171).[2]

---

[1] The government has assured counsel that the affiant made no statements to the Magistrate Judge other than to telephonically attest to the warrant, and that the Magistrate Judge asked no questions and accepted the affidavit in toto.  There are no recordings under F.R. Crim. P. 41(d)(2)(C).

[2] As Judge Davis noted most recently in *United States v. Thompson*, Case No. 3:20-cr-26-BJD-LLL

<2>

## II.   Background

On May 8, 2023, two weeks after the Tampa City Council election, armed FBI agents disabled the home surveillance cameras and raided the home and office of award-winning journalist Timothy Burke and his wife, newly elected Tampa City Council member Lynn Hurtak, and seized what amounts to millions of pages of records and more than 100 terabytes of digital data. The government specifically seized and examined the contents of Councilmember Hurtak's computers for evidence that her husband had used her computers,[3] and seized and withheld more than a dozen years of Mr. Burke's journalism, including paper notes with the names of confidential sources, fellow journalists, the contents of completed and incomplete articles, and a host of other items protected under the First Amendment.

The government targeted Mr. Burke because he was alleged to have been responsible for publishing newsworthy video content exposing Fox News Corporation and its then-most-prominent host, Tucker Carlson, to

---

(MDFL, November 6, 2023) a defendant is entitled to a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978) if the Defendant can make a "substantial preliminary showing that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez,* 450 F.3d 1283, 1293 (11th Cir. 2006) (internal quotations omitted).

[3]   The timing of the execution of the warrant was undoubtedly set right after the election to ensure compliance with Department of Justice Manual 9-85.500 and Principles of Federal Prosecution 9-27.260 which mandate that " any action likely to raise an issue or the perception of an issue" that a search warrant was timed to interfere with an election "requires consultation with the Public Integrity Section." There is nothing in the affidavit or the warrant to indicate how the agents complied with this provision.

<3>

embarrassment and criticism. More specifically, Burke is alleged to have found and obtained certain video content on the internet, and published and caused to be published news articles containing the video "outtakes" of an interview between Carlson and former Presidential Candidate Kanye "Ye" West, which had been heavily edited by Fox News Corporation to make West seem more palatable to the public. Such a warrant required the personal approval of the Attorney General under DOJ regulations, and was presumptively illegal under the Privacy Protection Act, 42 USC 2000aa, a law designed specifically to protect journalists from even being subjected to a search warrant in most cases. The PPA protects not only "professional journalists" but provides that:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by *a person reasonably believed to have a purpose to disseminate to the public a* newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if—
>
> > (1)there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate: *Provided, however, That a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained therein*

42 USC 2000aa(a)

<4>

Reading the 44-page affidavit in support of the warrant, what is most striking is what is missing. There is nothing about Fox News Corporation, Tucker Carlson, Kanye West, the named video streaming service, the fact that the video outtakes were published on news sites, or even *the fact that Burke was a journalist and was engaged in the act of journalism when he acquired and disseminated newsworthy information.* Because all of the subject persons and entities were anonymized, there was no way for the Magistrate Judge, or indeed the searching agents to distinguish between information that was covered by probable cause from that not covered, because the anonymized entities referenced -- Company-1, StreamCo, Broadcaster-1, did not exist, and *could not form the basis of a key-word search protocol* to narrow the search of digital material to only that for which probable cause was suggested. Indeed, even after seizing Mr. Burke's computers, the agents could not narrow their searches of the data based on the warrant itself, since there was absolutely no guidance proffered in the warrant itself, other than to look for evidence of "downloading without authorization" or "wiretapping." There were no truthfully named victims, entities, or companies—and only a timeframe to limit the scope of the search. And, of course, as only fictitious entities were identified in the affidavit, they could not alone form a factual basis for probable cause because they don't exist.

<5>

Despite seeking and obtaining an unprecedented warrant for a journalist engaged in journalism, there was nothing in the affidavit or warrant about how the government had complied with mandatory Department of Justice Privacy Act policies or the regulations designed to make searches of journalists narrow and reasonable -- or how the provisions of the 42 USC 2000aa regarding searches of journalists (essential to make the search "reasonable") had been complied with.

Despite binding law mandating that affidavits and warrants for searches for First Amendment-protected materials be drafted and executed with "scrupulous exactitude,"[4] there was no mention of such a requirement. The affidavit also misleadingly identified Burke as a "former journalist," and it disguised the fact that the offense conduct itself consisted of publishing newsworthy information to the public, otherwise known as journalism.

Despite the requirement that search warrants implicating journalists' materials (and indeed all privileged materials) be executed with a "filter team" or "taint team" and with *binding filter team protocols* limiting what investigators

---

[4] "The constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain.See Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127; A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809. No less a standard could be faithful to First Amendment freedoms. The constitutional impossibility of leaving the protection of those freedoms to the whim of the officers charged with executing the warrant is dramatically underscored by what the officers saw fit to seize under the warrant in this case."Stanford v. State of Tex., 379 U.S. 476, 48 (1965)

<6>

and prosecutors can see, this affidavit does not mention any such protocols and it appears that the issuing Magistrate Judge was never asked to impose such a requirement. These protocols are essential to make the warrant and its execution "reasonable." Indeed, the government used a series of pseudonyms for *every company, witness, or entity involved in the case* (except for Mr. Burke) in a sealed, *ex parte* affidavit provided only to the Magistrate Judge, then fought for nearly a year to keep the affidavit unsealed on the basis it contained names of entities and persons who would be harmed by unsealing and public disclosure of the affidavit. Yet when the affidavit was finally unsealed, it was revealed to contain <u>no names or identifications at all,</u> beyond those anonymized, fictitious identifiers that—for reasons that are still inexplicable–the government continues to utilize today.

A common sense reading of the affidavit alone raises fundamental questions - what is this case about, who are the entities or persons involved, why was this kept secret from the Magistrate Judge, how could probable cause be found without ?

### III.  The Warrant Affidavit Misrepresented Both The Facts and The Law Regarding Wiretap, Unauthorized Access, and Interception.

As noted in our Motion to Dismiss filed herewith, the warrant not only omitted critical facts, but actively deceived the Magistrate Judge on critical issues essential to probable cause. The Magistrate Judge was not told that the

<7>

allegedly "intercepted" oral communications were made between persons in a broadcast studio who had no expectation of privacy, and therefore did not constitute "oral communications" as defined under 18 USC 2510 (2), defining such communications as those "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

The Magistrate Judge was similarly not told that the "electronic communications" allegedly "intercepted" were, while located on obscure and hard-to-guess websites, still "configured to be readily accessible to the public" and therefore NOT covered by the wiretap statute. 18 U.S.C. 2511(g)(i).

The Magistrate Judge was not told that Burke's alleged "disclosure" of the "intercepted" communications was the publication of truthful and newsworthy information to the public, and as such, constitutionally protected speech under *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001), which can not be the basis for criminal charges. The Magistrate Judge was not even told that Mr. Burke was a journalist, let alone a well-regarded, award-winning journalist who specializes in digital and video journalism of the very kind that is the subject of this case.

Moreover, the Magistrate Judge was led to believe that Mr. Burke was guilty of the offense of "downloading information without authorization" in

<8>

violation of 18 USC 1030(a)(2)(C) - and indeed the warrant called for the seizure of evidence of that offense, despite the fact that the Supreme Court, overruling the 11th Circuit, emphatically found that "downloading information without authorization" is not a crime. *United States v. Van Buren*, 940 F.3d 1192 (11th Cir. 2019), rev'd and remanded, *Van Buren v. United States*, 593 U.S. 374 (2021).

In short, the offenses as cited and described in the affidavit were inconsistent with applicable law. Only by obscuring the nature of the conduct and removing key elements of the criminal offenses did the affiant provide any cause for the warrant. Reading these known but omitted facts back into the affidavit would eliminate any finding of probable cause. Providing the Magistrate Judge with the true full, factual context for the case -- that Fox News Corporation was humiliated because its editorial bias was revealed and its primary news anchor, Tucker Carlson, had been exposed by a journalist with an opposing political viewpoint; that Fox wanted to punish those responsible for publishing this truthful information so it hired lawyers and forensic computer experts to build a retaliatory case against that journalist for using credentials shared by their owner to the public, and then finding the information (the video live streams) on a website which was configured to be accessible to the public; and finally publishing the newsworthy information

<9>

that Fox preferred to conceal — all would have obviated any finding of probable cause.

At a minimum, the Magistrate Judge should have been told that this was a case about the First Amendment and involved protected journalistic materials so that the Magistrate Judge could have inquired about government compliance with laws, regulations, and policies designed to enforce the Supreme Court's requirement that such warrants be framed and executed with "scrupulous exactitude."  Here, there was a blanket warrant to take everything and rummage through everything, and that is what the government did.

### IV.    The Affidavit Concealed the Fact that the Government Proposed to Seize a Newsroom for Journalistic Materials, Which Required High Level DOJ Approval and Which Was Presumptively Unreasonable.

A search warrant for journalistic materials to a journalist or newsroom, particularly for information related to newsgathering activities, is presumptively unreasonable and unlawful.  Privacy Protection Act (PPA), 42 USC 2000aa (generally prohibiting such searches).  This is particularly true where the offense relates to a "person who has collected information for dissemination of that information to the public," and where the offense under investigation "consists of the receipt, possession, communication, or withholding of such materials or the information contained therein."  Rather than address this question, the affidavit concealed the fact that this statute

<10>

applied.

Here, the Magistrate Judge was not told that he was being asked to authorize a search for information about how a journalist obtained (received) and communicated (published) information. With this disclosure, this is a warrant that should never have been requested, much less authorized. More significantly, the Magistrate Judge was never told whether or not the government complied with DOJ regulations[5] to even seek a warrant to seize materials related to newsgathering activities. The Magistrate Judge was not informed that such a warrant required high-level approval by DOJ officials in Washington, D.C., up to and including the personal approval by the Attorney General. The issuing court was not informed whether such approval had been sought, obtained, or denied.

Indeed, while the prosecutors have represented to the Court of Appeals that they have "complied with applicable DOJ regulations" [6] related to seeking and executing warrants on journalists, this representation may be disingenuous -- they may simply have decided that the regulations don't apply. In which case, touting their compliance is misleading.

---

[5] 28 C.F.R. § 50.10(a)(1).

[6] *United States v. Burke*, No. 23-13649-HH (11th Cir., Feb. 26, 2024), United States Motion to Dismiss Appeal for Lack of Jurisdiction, p. 2 "The United States explained that it had obtained a warrant to seize the property at issue and had complied with all aspects of its own Privacy Protection Act policy and its News Media Policy during the investigation. Doc. 33 at 13, 19–25. And it explained that it had implemented a filter protocol to protect any applicable privileges."

<11>

The government did not provide any evidence of compliance with the regulations, which do not grant enforceable rights,[7] but are still an essential component necessary to ensure that the warrant is reasonable, the Magistrate Judge fully informed, and the warrant is written and executed with "scrupulous exactitude." Here, there was no representation about compliance, no evidence of a "taint or filter team," no binding "filter or taint team protocols," no method prescribed to narrow the scope of the warrant to ensure that agents were not exposed to privileged or protected First Amendment materials, and no reason for the Magistrate Judge to impose such requirements because he did not and could not know what Mr. Burke was, or who StreamCo, Corporation-1, Broadcaster-1, etc., were.

## V. The Omission of These Facts Rendered the Entire Warrant "Unreasonable" On Its Face.

In Zurcher *v. Stanford Daily*, 436 U.S. 547 (1978) the court noted, "A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material."[8] Here, the seizure of a newsroom *without* DOJ approval, *without* filter team protocols, *without* compliance with the PPA, without any minimization, and based on materially false statements and omissions, with the omission of all context **is**

---

[7] See 28 C.F.R. § 50.10(j)(the regulated grants no specific enforceable rights); In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1153 (D.C. Cir. 2006); 42 U.S.C. § 2000aa-6(e)("[e]vidence otherwise admissible in a proceeding shall not be excluded on the basis of a violation of this chapter.")

[8] Quoting Roaden v. Kentucky, 413 U. S. 496, 413 U. S. 501 (1973).

<12>

**unreasonable -** even if it might have been reasonable in a "different setting, or with respect to another kind of material." The Magistrate Judge did not know, and could not have known, that he was being asked to order the seizure of a newsroom, so he could not and did not impose the kinds of restrictions essential to meet the First Amendment's "scrupulous exactitude" test. This was not "scrupulous exactitude" -- it was "grab and go."

For example, even though DOJ regulations mandate the appointment of a "filter team" whenever there is a possibility that a seizure will implicate newsgathering, [9] or as here, will seize privileged materials [10] like those of City Council Member Lynn Hurtak, [11] the government simply chose to mislead the Magistrate Judge by not telling him that such materials were sought. Without a filter team, properly limited by an appropriate protocol ordered by the Court,

---

[9] See, 28 C.F.R. § 50.10 (o) "members of the Department *must use filter protocols* when the compulsory legal process relates to a member of the news media acting within the scope of newsgathering or the compulsory legal process *could potentially encompass newsgathering-related materials that are unrelated to the conduct under investigation.*"

[10] See, F.R.Evid. 501 and Fla. Stat. § 90.5015. *Price v. Time, Inc.*, 416 F. 3d 1327 (11th Cir., 2005); *Loadholtz v. Fields,* 389 F. Supp. 1299 (M.D. Fl., 1975)("the First Amendment occupies a preferred position among the individual rights conferred by the Constitution and that any infringements thereon are closely scrutinized and strictly limited. *Gooding v. Wilson,* 405 U.S. 518 (1972); *Cohen v. California,* 403 U.S. 15 (1971); *Speiser v. Randall,* 357 U.S. 513 (1958). The concept of freedom of the press as guaranteed by the First Amendment is the keystone of our constitutional democracy and is broad enough to include virtually all activities for the press to fulfill its First Amendment functions.")

[11] See, DOJ Manual 9-19.221 "Where the materials sought are in the possession of a disinterested third party physician, lawyer, or clergyman, *application for a warrant must be approved by the appropriate Deputy Assistant Attorney General as described in 9-19.220."* The section is intended to protect applicable privileges, and **should include Councilwoman Hurtak's legislative privilege as well.** Here, *the government simply did not tell the Magistrate Judge that Burke's "wife" was a member of the City Council,* and that her computer likely contained privileged information.

<13>

the seizure becomes unreasonable under *Zurcher*.[12]  Indeed, a "filter team"

protocol could not have been authorized by the Magistrate Judge since he had

*no knowledge of the true identity of the entities which would have been within the*

*scope of the warrant.* [13]

## VI.    The Warrant Was A Prohibited "General Warrant"

It is hard to imagine a warrant that could be more broad than the one

here.  Despite the admonition that warrants for First Amendment materials be

executed with "scrupulous exactitude," the warrant here was about as general

as could be. It called for the seizure of evidence that information was

"downloaded without authorization" — not a crime -- and without guidance

as to information from which servers such information may have been

downloaded, for which purposes, and in what context.    Indeed, any

information from which such context could have been gleaned -- either by the

Magistrate Judge or the searching agents -- had been removed by the affiant.

---

[12] See, e.g., *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means,* 11 F.4th 1235, 1249 (11th Cir. 2021)(modified filter team protocols necessary to protect privilege and make seizure of privileged materials reasonable).  In this case, the government has never provided "a description of its privilege filter process" *Trump v. United States*, 54 F.4th 689, 696 (11th Cir. 2022), or indeed *any evidence that any filter process actually existed*, and the Magistrate Judge had no reason to impose or review such a process because the government concealed the fact that they were seeking information about newsgathering and dissemination. Post-seizure, the government's investigative team - rather than the "taint team" requested Mr. Burke's counsel provide them a list of Burke's confidential sources, and the nature of the stories he was working on that might be protected from disclosure or use.  Burke, through counsel, declined to do so, as this would itself waive the privilege.

[13] Again, it bears repeating that the government has confirmed that the issuing Magistrate Judge was provided NO INFORMATION beyond the 4 corners of the affidavit.

<14>

As such, agents could *and did* seize everything Mr. Burke ever downloaded, viewed, or accessed because they were permitted to assume that some small subsection of dozens of terabytes of material might have been downloaded "without permission." [14]Hardly the kind of "specificity" one would expect in a warrant generally, and certainly not a warrant requiring "scrupulous exactitude." Indeed, this warrant authorized the seizure of any electronic device that contained information about downloading or publishing information. So, not only was there a general warrant authorizing the seizure of evidence of downloading *anything*, but the warrant also authorized the seizure of all mass storage devices in case they contained information about downloading anything. Other than a date range, the warrant provided no guidance to agents about how to discriminate what was "covered" by the warrant (what they could look at and look for) from what was outside its scope. The warrant expressly invited an "exploratory rummaging" through constitutionally protected materials with no guidance to discern that which was protected from that which was not.

Indeed, even post-seizure, the agents could not limit their search for evidence related to Fox News, Tucker Carlson, LiveU.tv, CBS News, or any other entity because no such entity was mentioned in either the warrant or the

---

[14] We estimate that less than .3 percent of the seized materials relate to the charges in the Indictment.

<15>

<u>affidavit</u>.  It was carte blanche to seize everything, and they did — from video game consoles to routers — and then to look for evidence of information possessed "without permission."  It would be hard to imagine a more general warrant, other than one which said, "find evidence of crime."

This was not the kind of "complex fraud investigation" that required the assembly of diverse materials from a "paper puzzle."  See, e.g., *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982) — according to the indictment, it is a case involving discrete incidents of downloading TV broadcasts and disclosing them to the public.  At best, the seizing agents had probable cause to believe that a journalist used a shared and published credential to access a website and then viewed TV broadcasts streaming on that website.  Even if they convinced the Magistrate Judge that this was a crime, this did not justify the seizure of the complete works - work product, source materials, contacts, and communications of a journalist.  The warrant here was no more "specific" than, for example, the prohibited general warrants that authorized the seizure of "evidence of fraud"[15] or "evidence of crime"[16] or the entirety of a person's Facebook account based on allegations that some of the communications were

---

[15] *United States v. Srivastava*, 476 F. Supp. 2d 509, 514 (D. Md. 2007)(warrant authorizing seizure of "evidence of fraud" was general warrant)
[16] *United States v. Stefonek*, 179 F. 3d 1030, 1032-33 (7th Cir., 1999) (search warrant for "`evidence of crime'" was "[s]o open-ended" in its description that it could "only be described as a general warrant").

<16>

evidence of crime.[17]

The problem is exacerbated where, as here, the materials seized included electronic records amounting to "[t]he sum of an individual's private life…" *Riley v. California,* 573 U.S. 373, 394 (2014), and not just any individual, but a journalist seeking to expose hypocrisy, bias, and corruption in the media, and where the affidavit contains no names of actual entities to limit the scope of the warrant.[18]  Indeed, once the government seized virtually every record of the journalist, rather than limiting their search to evidence of the alleged crimes nominally described in the affidavit, they began the process of simply "looking for victims," -- mining the data to see if they could find a crime (not just find evidence of the crime described in the affidavit) and determining the extent of Mr. Burke's permission to view every file ever downloaded to his computers. [19]

---

[17] *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017)"The Facebook warrants … required disclosure to the government of virtually every kind of data that could be found in a social media account. … And unnecessarily so. With respect to private instant messages, for example, the warrants could have limited the request to messages sent to or from persons suspected at that time of being prostitutes or customers. And the warrants should have requested data only from the period of time during which Moore was suspected of taking part in the prostitution conspiracy. Disclosures consistent with those limitations might then have provided probable cause for a broader, although still targeted, search of Moore's Facebook account. That procedure would have undermined any claim that the Facebook warrants were the internet-era version of a "general warrant." *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

[18] The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. *See Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5 (1984); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  Even if the affidavit were incorporated by reference into the warrant (which it was not) a search for records of "StreamCo" or "Broadcaster-1" would be futile, as those are fictitious entities, made up by the government.

[19] Moreover, the agents are not entitled to rely on the "good faith" provisions of  *United States v. Leon,* 468 US 897 (1984) where, as here, the overbreadth is readily apparent from the face of the warrant. *Groh v. Ramirez*, 540 US 551, 562-63 (2004). *United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000)(officers do not act in objective good faith, however, if the warrant is so overly

<17>

In sum, the warrant here did not tell the Magistrate Judge any background that was essential for a finding of probable cause. It omitted who was involved, the context of the investigation, and even the fact that Mr. Burke had collected and disseminated information for distribution to the public — critical issues for both probable cause and the reasonableness of the warrant, or indeed, whether it could be issued at all.

The Magistrate Judge never narrowed the scope of the warrant for "scrupulous exactitude" because he was never told that there was any reason to do so. Similarly, the Magistrate Judge never imposed filter team protocols, post-seizure minimization requirements, or requested evidence of compliance with the PPA or DOJ regulations, because he was not told that they applied. The Magistrate Judge was misled about the character of the information allegedly obtained. It was falsely implied that the "intercepted" communications were not made in a public place between people with no expectation of privacy, and that they were "intercepted" from a web resource that was not "readily accessible to the public." The Magistrate Judge was never told that the act of disclosing the contents of interceptions— what the Supreme Court called "pure speech," was a constitutionally protected activity. Indeed,

broad on its face that the executing officers could not reasonably have presumed it to be valid.)
*Accord, United States v. Maal*i, 346 F. Supp. 2d 1226 (MDFL, 2004); *United States v. McCall*, 84 F.4th 1317, 1329 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1042, 218 L. Ed. 2d 193 (2024).

<18>

the Magistrate had no reason to ask, because he could not have known that this case had anything to do with a journalist, or the First Amendment and protected activity.

Worst of all, the warrant called for seizure of all electronic records for evidence that *any* portion thereof was downloaded "without permission" which is not a crime, that the contents of non-private oral communications were acquired, or that the contents of these communications, transmitted over the Internet, were "intercepted" from a server with an obscure but public internet address that was configured to be "readily accessible" to the public by using access credentials that the owner had voluntarily shared with the public.

**VII. The Court Should Order A *Franks* Hearing And Require Discovery Related to Franks Issues.**

Taking the Supreme Court's admonition that "a seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material" to heart, the seizure of the entire contents of a newsroom—based on a misleading affidavit rife with material emissions of fact and law. This demands a hearing under Franks. Specifically, the hearing should address:

1. What approvals did the government seek and/or obtain to comply with the provisions of 42 USC 2000aa and the DOJ Press Policy, and what, if any,

<19>

representations did it make to the DOJ and/or to the Magistrate in connection with such approvals that do not appear in the affidavit?

2.      What filter team protocols were in place to minimize the information provided to the investigators to protect privileged journalistic communications and sources, and to protect legislative privilege that do not appear in the affidavit? What was the filter team told, and what did they disclose to the investigators?

3.      What were the search terms or search term protocols used to minimize the search and to comply with the requirement of "scrupulous exactitude" after the items had been seized?  How did the search agents determine who or what were "additional victims" and what materials were "related to violations of 18 USC 1030 and 18 USC 2511?"

4.      How did the searching agents narrow the scope of what they examined without reference to the true names of entities like "Broadcaster-1" or "Company-1?"

5.      The warrant called for the seizure of the computers of "Burke's Wife" without mentioning that she was a member of the Tampa City Council How did the searching agents protect the legislative privileges of Councilmember Hurtak while searching her computer, without knowledge of the fact that "Burke's

<20>

wife" was a member of the City Council?

We therefore ask that this Court require a *Franks* hearing and permit discovery on related suppression issues.

Respectfully submitted,


Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
Fax: (813) 253-2553


Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
Admitted *Pro hac vice*


COUNSEL FOR TIMOTHY BURKE

<21>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

_s/Michael P. Maddux_
Michael P. Maddux, Esquire

<22>