UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                    Case No: 8:24-cr-00068-KKM-TGW

TIMOTHY BURKE,

　　Defendant.

_____

## ORDER

A grand jury returned a fourteen-count indictment against Timothy Burke, finding probable cause that Burke violated various provisions of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C § 1030, and the Wiretap Act, 18 U.S.C. § 2511, and conspired to do the same. Indictment (Doc. 1). Burke moves to dismiss, arguing that the indictment omits elements of the offenses and charges non-criminal and constitutionally-protected conduct. Mot. to Dismiss (MTD) (Doc. 64). I deny Burke's motion.

## I.  BACKGROUND

StreamCo, Inc., is a company that provides live video streaming. Indictment (Count 1) ¶ 8. One of its services, "StreamCo-Net," allows broadcaster-customers

to record and transmit content over the internet. *Id.* ¶ 9. Broadcasters can preview video content by accessing specific uniform resource locators (URLs), which include a unique code (called a BID) generated by an algorithm. *Id.* Each BID—which includes between nine and sixteen characters—is associated with a specific StreamCo device, and each device is ordinarily associated with one StreamCo customer. *Id.* ¶ 10. To transmit video, one StreamCo device encodes the video and then sends it to another StreamCo device capable of decoding the transmission. *Id.* ¶ 11. A customer can access their content on a password-protected website by entering assigned credentials. *Id.* ¶ 12.

According to the indictment, Burke conspired with another to use "compromised credentials" to gain "unauthorized access" to StreamCo-Net. *Id.* ¶ 23e. With this access, Burke obtained thousands of unique StreamCo-Net URLs, which include BIDs. *Id.* ¶¶ 9, 23h. The conspirators allegedly intercepted "electronic wire, oral, and/or video communications" transmitted by a multinational media company (Network #1) and a commercial broadcast television and radio network (Network #2). *Id.* ¶¶ 13, 15, 23i. Burke then downloaded these communications and disclosed some of them. *Id.* ¶¶ 23i–23j.

Separately, the indictment alleges that Burke used "compromised credentials to gain unauthorized access" to a "file transfer protocol" server for a National Sports League (NSL). *Id.* ¶¶ 7, 23b. Burke allegedly communicated with his co-conspirator about these comprised credentials and about Burke's "efforts to obtain, download, and steal electronic items and information" found on this server. *Id.* ¶¶ 23a, 23c.

Based on this conduct, a grand jury indicted Burke on fourteen counts. Burke is charged with six counts of intentionally accessing a protected computer without authorization and obtaining information from it, in violation of the CFAA. Indictment at 17–20 (citing 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(ii), and 18 U.S.C. § 2) (Counts Two through Seven). Counts Two and Three relate to Burke's access of the NSL server. *Id.* at 17–18. Counts Four through Seven relate to Burke's access of Stream-Co Net to obtain BIDs. *Id.* at 18–20. Burke is charged with five counts of intentional interception of a wire, oral, and electronic communication relating to intercepted audio and video streams transmitted by Networks #1 and #2, in violation of the Wiretap Act. Indictment at 20–21 (citing 18 U.S.C. § 2511(1)(a) and 18 U.S.C § 2) (Counts Eight through Twelve). Burke is charged with two counts of intentionally disclosing an illegally intercepted wire, oral, and electronic

communication relating to two audio and video streams transmitted by Network #1 on StreamCo-Net, also in violation of the Wiretap Act. Indictment at 22 (citing 18 U.S.C. § 2511(1)(c), and 18 U.S.C. § 2) (Counts Thirteen and Fourteen). Finally, Burke is charged with conspiring to commit all these substantive offenses. Indictment at 1–17 (citing 18 U.S.C. § 371) (Count 1). Burke moves to dismiss the fourteen counts. MTD.

## II.   LEGAL STANDARD

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An "indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (quoting *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999)).

A defendant may move to dismiss an indictment that fails to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v). "In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true,

determine whether a criminal offense has been stated." *United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986). An indictment states an offense when it "allege[s] each of the elements of the statute." *United States v. Plummer*, 221 F.3d 1298, 1302 (11th Cir. 2000). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)).

An indictment's sufficiency "is determined from its face," without consideration of other evidence. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam). In other words, a court may not dismiss an indictment "on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Courts view the indictment in the light most favorable to the government. *See United States v. Sharpe*, 438 F.3d 1257, 1264 (11th Cir. 2006).

## III.   ANALYSIS

Burke raises four main arguments in his motion. First, Burke argues that, under the First Amendment, the government may not prosecute him for disclosing the contents of an unlawfully intercepted communication. MTD at 6–7. Second, Burke argues that the "substantive wiretap charges are defective" because the indictment omits certain elements. *Id.* at 8–13. Third, Burke argues that the six CFAA counts are defective because the indictment is predicated on an incorrect interpretation of "authorization" in § 1030(a)(2)(C). *Id.* at 13–23. Within this argument, Burke contends that "downloading without authorization" is not itself a crime under the CFAA. *Id.* at 17–18. Fourth, Burke argues that the conspiracy count must be dismissed because the indictment alleges that Burke conspired with another to engage in non-criminal conduct. *Id.* at 23–24.

### A. Counts Thirteen and Fourteen Do Not Violate the First Amendment

Any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection" violates § 2511(1)(c). In *Bartnicki v. Vopper*, the Supreme Court held that the First

Amendment protects against prosecution under § 2511(1)(c) if a party lawfully obtains and then publishes "truthful information of public concern." 532 U.S. 514, 534 (2001). Based on *Bartnicki*, Burke argues that the "act of disclosing (distinguished from the 'interception' itself) is pure and protected speech and cannot be criminalized." MTD at 7; Reply (Doc. 76) at 4–5.

*Bartnicki* provides no basis to dismiss Counts Thirteen and Fourteen. The Supreme Court accepted three factual propositions "that serve to distinguish most of the cases that have arisen under § 2511." 532 U.S. at 525. The first two were, in part, that the defendants "played no part in the illegal interception" and that "their access to the information on the tapes was obtained lawfully, even though the information itself was intercepted unlawfully by someone else." *Id.*; *see also id.* at 538 (Breyer, J., concurring) (explaining that the defendants "engaged in no unlawful activity other than the ultimate publication of the information another had previously obtained"). The third proposition was that the "subject matter of the conversation was a matter of public concern." *Id.* at 525.

The Court, therefore, addressed a narrow question: "Where the punished publisher of information has obtained the information in question in a manner lawful in itself but from a source who has obtained it unlawfully, may the government

7

punish the ensuing publication of that information based on the defect in a chain?"
*Id.* at 528 (majority opinion) (quoting *Boehner v. McDermott*, 191 F.3d 463, 484–
85 (D.C. Cir. 1999) (Sentelle, J., dissenting)); *see id.* at 529 (reaffirming the fact-
bound nature of the issue); *id.* at 541 (Breyer, J., concurring) (emphasizing the
"particular circumstances" before the Court). The holding was equally narrow: a
"stranger's illegal conduct does not suffice to remove the First Amendment shield
from speech about a matter of public concern." *Id.* at 535 (majority opinion).

The Supreme Court did not address the question of "whether, in cases where
information has been acquired *unlawfully* by a newspaper or by a source, government
may ever punish not only the unlawful acquisition, but the ensuing publication as
well." *Id.* at 528 (emphasis in the original) (quoting *Fla. Star v. B.J.F.*, 491 U.S. 524,
535 n.8 (1989)). The Court has refrained from answering the question in other cases
too. *See, e.g.*, *Fla. Star*, 491 U.S. at 535 n.8 (noting that the issue "was raised but
not definitively resolved" in *New York Times Co. v. United States*, 403 U.S. 713
(1971), and "reserved" in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829
(1978)); *Landmark Commc'ns, Inc.*, 435 U.S. at 837 ("We are not here concerned
with the possible applicability of the statute to one who secures the information by
illegal means and thereafter divulges it."). When concluding that the First

8

Amendment protects the disclosure, the Court has always focused on information "lawfully obtained." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104 (1979) ("If the information is lawfully obtained, as it was here, the state may not punish its publication except when necessary to further an interest more substantial than is present here."). On the other hand, the Court has suggested that the First Amendment may not apply when the defendant unlawfully obtains the information. *See Fla. Star*, 491 U.S. at 534 ("To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the *Daily Mail* principle the publication of any information so acquired."); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) ("[T]he truthful information sought to be published must have been lawfully acquired. The press may not with impunity break and enter an office or dwelling to gather news.").

In this case, the grand jury found probable cause that Burke played a "part in the illegal interception" of the subsequently disseminated material and charged him with five counts under § 2511(1)(a). *Bartnicki*, 532 U.S. at 525; *see* Indictment at 20–21 (Counts Eight to Twelve). As a result, *Bartnicki*'s narrow holding does not apply.

9

Burke provides no reason to extend *Bartnicki* to this circumstance. In *Bartnicki*, the Court's reasoning relied on balancing the free speech interest of dissemination on matters of "public concern" and the government's two interests supporting § 2511(1)(c). 532 U.S. at 529–35. Those interests included "removing an incentive for parties to intercept private conversations" and "minimizing the harm to persons whose conversations have been illegally intercepted." *Id.* at 529. Although the Court concluded that the first interest did not justify the application of § 2511(1)(c) to "an otherwise innocent disclosure of public information," *id.* at 532, this case differs in the light of the allegation that Burke participated in the unlawful interception of the information, *see* Indictment at 20–21. As applied here, § 2511(1)(c) denies an alleged wrongdoer "the fruits of his conduct," *Fultz v. Gilliam*, 942 F.2d 396, 401 (6th Cir. 1991), while not suppressing the speech of "a law-abiding possessor of information" in an attempt to "deter conduct by a non-law-abiding third party," *Bartnicki*, 532 U.S. at 529–30. When a defendant procures the communications himself, "a prohibition on the publication of [those communications] operates as an effective deterrent against the initial unlawful acquisition of that same information." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 952 (7th Cir. 2015). Intercepting communications "carries little benefit

10

independent of the right to disseminate that information to a broader audience." *Id.* Therefore, the government's deterrence interest is markedly stronger here than in *Bartnicki*, and, on these facts, the government's prosecution under § 2511(1)(c) does not violate the First Amendment.

Moreover, there are substantial reasons to doubt that *Bartnicki*'s method aligns with the original understanding of the First Amendment, which means courts ought to proceed cautiously when asked to extend it. *See Garza v. Idaho*, 586 U.S. 232, 259 (2019) (Thomas, J., dissenting) (explaining that courts "should tread carefully" before extending non-originalist precedents). There is "no evidence [from the founding] indicat[ing] that the First Amendment empowered judges to determine whether particular restrictions of speech promoted the general welfare." Jud Campbell, *Natural Rights and the First Amendment*, 127 YALE L.J. 246, 259 (2017). "This makes sense given that the Founders viewed value judgments and policy considerations to be the work of legislatures, not unelected judges." *United States v. Sineneng-Smith*, 590 U.S. 371, 385 (2020) (Thomas, J., concurring). Yet in *Bartnicki*, the Supreme Court undertook the job of balancing "important interests"—primarily privacy concerns and the interest in publishing matters of public interest—to conclude that Congress erred when it prohibited disclosing

unlawfully intercepted communications. 532 U.S. at 533–34; *see id.* at 552 (Rehnquist, C.J., dissenting) ("At base, the Court's decision to hold these statutes unconstitutional rests upon nothing more than the bald substitution of its own prognostications in place of the reasoned judgment of 41 legislative bodies and the United States Congress."); *id.* at 555–56 (explaining that, because of the majority opinion, "Congress'[s] effort to balance" the "claim to privacy against a marginal claim to speak freely" is "set at naught"). In the intervening decades since that decision, both the opportunity and incentive to anonymously obtain and later disclose communications has grown exponentially and, with those rises, Congress's corresponding interest in deterring that public harm. *Bartnicki* thus proves the perils of judicial balancing and provides a good basis to pause before extending that reasoning.

In sum, *Bartnicki* does not control this case, and Burke has not shown that extending *Bartnicki* is warranted. *Cf. Bartnicki*, 532 U.S. at 529 (assuming that the government's two stated interests "adequately justify the prohibition in § 2511(1)(d) against the interceptor's own use of information that he or she acquired by violating § 2511(1)(a)"). Therefore, for these reasons, I deny Burke's motion to dismiss

Counts Thirteen and Fourteen on the basis that the First Amendment protects Burke's alleged speech.

## B. Counts Eight Through Twelve are Legally Sufficient

Burke next attacks the sufficiency of the five counts charging violations of § 2511(1)(a). That provision penalizes any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." The indictment largely tracks this language and alleges that Burke "intentionally intercepted, endeavored to intercept, and procured another person to intercept and to endeavor to intercept, the contents of a wire, oral, and electronic communication as it was occurring, by means of a device, namely a computer." Indictment at 20–21; *see In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) (listing these elements in a civil case); 18 U.S.C. § 2510(4) (defining "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device"). The indictment provides details of each alleged intercepted communication, including the date, the IP address of the computer used, and the communication acquired. Indictment at 21. In largely tracking the language of § 2511(1)(a) and enumerating each allegedly intercepted

13

communication, the indictment informs Burke "of the charge[s] against which he

must defend" and enables Burke "to plead an acquittal or conviction in bar of future

prosecutions for the same offense[s]." *Hamling*, 418 U.S. at 117.

Burke nonetheless argues that the indictment fails to allege necessary elements

of § 2511(1)(a). Because the statutory exceptions Burke cites constitute affirmative

defenses and the indictment need not allege the statutory definition of "oral

communication," Burke's arguments fail.

## 1. § 2511's Exceptions

Burke argues that Counts Eight through Twelve are defective because the

indictment fails to negate two statutory exceptions. MTD at 9–13; Reply at 2–3.

First, Burke contends that the grand jury ought to have found probable cause that

the communications were intercepted without "consent," as provided in

§ 2511(2)(d). *See id.* ("It shall not be unlawful under this chapter for a person not

acting under color of law to intercept a wire, oral, or electronic communication

. . . where one of the parties to the communication has given prior consent to such

interception unless such communication is intercepted for the purpose of

committing any criminal or tortious act in violation of the Constitution or laws of

the United States or of any State."). Second, Burke contends that the grand jury

14

ought to have found probable cause that the electronic communications were not "readily accessible," as provided in § 2511(2)(g)(i). *See id.* ("It shall not be unlawful under this chapter . . . for any person . . . to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public."). Burke is wrong twice over.

When encountering an issue of first impression, a three-part inquiry informs "whether an exception to a criminal offense is an element of the crime or an affirmative defense." *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997). I start where one always ought, with "the language and structure of the statute." *Id.* Two interpretive presumptions are relevant at this stage: (1) "a narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element of the offense" and (2) "where one can omit the exception from the statute without doing violence to the definition of the offense, the exception is more likely an affirmative defense." *Id.* After considering the statute's language and structure, I must "examine the legislative history of the provision," before considering whether the "defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception." *Id.*

As for Burke's "consent" argument, I have no occasion to engage in the above analysis: precedent provides that § 2511(2)(d)'s consent exception is not an element of an offense under § 2511(1)(a) that the indictment need allege. In *United States v. McCann*, the defendants argued that the district court "committed reversible error by not dismissing the indictment against the appellants because it did not negate all the statutory exceptions listed in 18 U.S.C. § 2511." 465 F.2d 147, 162 (5th Cir. 1972).[1] The Fifth Circuit rejected this argument, holding that it "was not necessary to recite in the indictment that the interceptions were made without consent." *Id.*; *see United States v. Kloess*, 251 F.3d 941, 945 (11th Cir. 2001) ("The Supreme Court has made clear that 'an indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere." (omissions in the original) (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922))). Instead, if the defendants "believed that they came within . . . the consent exception it was incumbent upon them to prove this fact." *McCann*, 465 F.2d at 162. *McCann* thus forecloses Burke's argument as to § 2511(2)(d), the consent

---

[1] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

provision. *See Kloess*, 251 F.3d at 945 (citing *McCann* for proposition that statutory exceptions found in distinct clause of statute need not be charged in indictment).

Burke does not meaningfully distinguish *McCann*. He first argues that there was no challenge in *McCann* to "the charging document for failing to allege that the interceptions were nonconsensual." Burke Suppl. Br. (Doc. 90) at 6. That is incorrect. The defendants argued that the district court "committed reversible error by not dismissing the indictment against the appellants because it did not negate all the statutory exceptions listed in 18 U.S.C. § 2511." *McCann*, 465 F.2d at 162. The Fifth Circuit squarely rejected this argument. *Id.* That the court did not use the term affirmative defense in referring to the exceptions, including consent, does not change the logic of its holding.

Burke next argues that *McCann* is distinguishable on the facts because consent "was simply not an issue" there. Burke Suppl. Br. at 6–7. In doing so, Burke conflates the two different holdings of the Fifth Circuit. The first, above, that the statutory exceptions need not be alleged in the indictment. The second, that no factual predicate existed for the district court to instruct the jury on the defense of consent. If the defendants in *McCann* believed consent non-applicable, presumably they would not have appealed on these two bases. Moreover, Burke raises a pure

17

question of law at the motion to dismiss stage and whatever factual differences exist are irrelevant to determining whether the government has the burden of alleging consent as an element of wiretapping. On that legal question, *McCann* holds it does not.

Burke also points to out-of-circuit civil cases that purportedly "have refused to follow *McCann*, either expressly or impliedly." *Id.* at 7–8. He argues that reading § 2511(2)(d) as an affirmative defense will "do violence" to the statute by turning it into "a broad prohibition on acquiring the contents of communications" and improperly placing the burden on the defendant to prove that his conduct is lawful. *Id.* at 8–9. Regardless of out-of-circuit precedent and Burke's policy arguments, I am bound to follow Eleventh Circuit precedent until *McCann*'s "holding is overruled by the [Eleventh Circuit] sitting en banc or by the Supreme Court." *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). Therefore, I deny Burke's motion to dismiss because the indictment did not negate § 2511(2)(d)'s consent exception.

Burke also argues that the wiretapping charges fail because the grand jury never charged that the intercepted electronic communications were not "readily accessible to the general public." 18 U.S.C. § 2511(2)(g)(i); *see* MTD at 10–13. I

18

asked the parties to provide supplemental briefing on this question in the light of *McCann* and *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006). (Doc. 87).

Although Congress added the exception in § 2511(2)(g)(i) after *McCann*, *see* Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, § 101(b), 100 Stat. 1848, 1849–50 (1986), *McCann*'s holding applies with equal force, *see* USA Suppl. Br. (Doc. 91) at 4; *cf. United States v. Haggerty*, 997 F.3d 292, 300–01 (5th Cir. 2021) (stating that exceptions in the same statutory clause should be "treated similarly"). Even without *McCann*, the three-part inquiry favors the government's reading that "readily accessible" is an affirmative defense.

Looking first to the statutory text and structure, § 2511(2)(g)(i), like § 2511(2)(d), is "an exception" made by a "distinct clause." *McKelvey*, 260 U.S. at 357; *see United States v. Johnson*, 981 F.3d 1171, 1185 (11th Cir. 2020) ("We think that separating the subparagraph (A) provisions from those in subparagraph (B) suggests that Congress envisioned different roles for the two subparagraphs."); *Kloess*, 251 F.3d at 945 (concluding that a "narrow exception" to a "general proscription," that appears in a "distinct clause" in a "different section of the statute," is not an element); *McArthur*, 108 F.3d at 1353 ("[A] narrow proviso to a more general statutory offense is more likely to be an affirmative defense than an element

19

of the offense."). Congress proscribed the conduct articulated in § 2511(1) and then carved out exceptions in § 2511(2). In the light of the "collection of narrow exceptions" in § 2511(2) (and elsewhere), *see* USA Suppl. Br. at 8 & n.4, the statutory structure indicates that the indictment need not negate all the exceptions to each kind of violation of § 2511(1). Instead, a common-sense reading of the statute suggests that a defendant must prove the existence of a relevant exception instead of the government needing to disprove the applicably of a host of various exceptions as part of its case-in-chief.

Relatedly, the "readily available" exception in § 2511(2)(g)(i) for electronic communications can be omitted from § 2511(1)(a) "without doing violence to the definition of the offense." *McArthur*, 108 F.3d at 1353. "In rare instances, an exception can be so necessary to a true definition of the offense that the elements of the crime are not fully stated without the exception." *United States v. Outler*, 659 F.2d 1306, 1310 (5th Cir. Unit B Oct. 1981).[2]

For example, in *Sutton v. United States*, one of the regulations at issue provided "that no person shall possess a rationed commodity except in accordance

---

[2] Decisions rendered by a Unit B panel of the former Fifth Circuit are considered binding precedent in the Eleventh Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

with the provisions of a ration order." 157 F.2d 661, 665 (5th Cir. 1946). The exception informed the very nature of the prohibition and was contained "in the first sentence." *Id.* (concluding that the exception "constitutes a part of the definition of the offense"). A contrary reading would "simply provide[] that no person shall possess a rationed commodity," which "no one intended" to prohibit. *Id.* This result would be non-sensical, as "rationed commodity" implies some amount of goods have been provided. Therefore, the court said, "it was necessary for the information, by proper allegation, to negative the exception in the first sentence." *Id.*; *see id.* at 665–66 ("In an indictment or information, it is not necessary to negative the matter of an exception made by a proviso or other distinct clause in the statute, whether in the same section or elsewhere; but, if the exception itself is incorporated in the definition of the offense so that the elements of the crime are not fully stated without the exception, then it must be negatived." (footnote omitted)).

Here, § 2511(1)(a) "defines a perfectly cogent offense" without looking to the host of statutory exceptions located in other subsections. *McArthur*, 108 F.3d at 1354; *cf. Kloess*, 251 F.3d at 945 ("The description of the offense proscribes certain conduct and requires that the defendant acted 'knowingly and willfully.' Consequently, we can omit the exception provided by Section 1515(c) from the

statute without doing violence to the definition of the offense."). Section 2511(1)(a) penalizes any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." "[T]he ingredients constituting the offence"—here, the intentional interception of an electronic communication—"may be accurately and clearly defined without any reference to the exception." *United States v. Cook*, 84 U.S. 168, 173 (1872); *cf. McCann*, 465 U.S. at 162. Unlike in *Sutton* for example, the Wiretap Act on its face penalizes intentional interceptions of electronic communications and later excludes those that are "readily accessible to the general public." § 2511(2)(g)(i). The exception is not contained in the same sentence of the statute and does not "constitute[] a part of the definition of the offense." *Sutton*, 157 F.2d at 665.

The text and statutory structure favor the government's reading, and the "legislative history of the provision" provides little additional insight. *McArthur*, 108 F.3d at 1353. The House Report refers to § 2511(2)(g)(i) as an "exemption[] from criminal liability" and a "generic exception." H.R. REP. No. 99-647, at 41 (1986). The House Report explains that the provision permits interception of electronic communications when "readily accessible to the general public," but without

22

suggesting that the government has the burden of negating the exception. *Id.* The Senate Report describes the exceptions found in § 2511(2)(g) as "exemptions from criminal liability," and states that, under § 2511(2)(g)(i), it "would not be unlawful to intercept" certain communications "that are transmitted for the use of the general public." S. REP. 99-541, at 18 (1986); *see id.* ("Under proposed section 2[5]11(2)(g)(i), it is permissible to intercept electronic communications made through an electronic communication system configured so that the communication is 'readily accessible to the general public.'"). The parties do not identify any other relevant legislative history, and neither the House Report nor the Senate Report provides much assistance in determining whether the exception is an element or affirmative defense.

Finally, the government argues that a defendant is "better equipped" to prove that § 2511(2)(g)(i) applies. USA Suppl. Br. at 7. I agree that, in the ordinary case, "a defendant will be in the best position to prove facts necessary" to establish that the intercepted electronic communications were "made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public." *McArthur*, 108 F.3d at 1355; § 2511(2)(g)(i). For example, here, Burke intimates throughout his filings that his

23

access and interception of electronic communications was by way of public, albeit obscure, online access. Burke contends that sort of journalism is his specialty. MTD at 2 ("Burke, an award-winning journalist and media consultant, is known for finding and reporting on information he finds in obscure and hidden areas of the Internet—often information that people do not know has been made public, and that they do not want to be exposed."). As a result, I suspect much of the trial will be devoted to presenting evidence of *how* Burke obtained the electronic communications. Naturally, Burke is uniquely better equipped to adduce evidence about how he went about getting the communications. The jury then must decide whether those communications were "readily accessible to the general public."

To counter the application of the *McArthur* inquiry, Burke argues that permitting the "readily accessible" exception as an affirmative defense rather than an element allows the government to bring prosecutions based on a wide swath of innocent and ordinary online activity. In theory, perhaps. In practice, Burke cites not a single instance of the government indicting someone for watching television or googling something. Burke makes a similar argument with respect to the consent exception in § 2511(2)(d). *See* Burke Suppl. Br. at 8 (arguing that "violence" would be done to § 2511(1)(a) if the indictment did not have to negate the consent

exception because § 2511(1)(a) would turn into a "a broad prohibition on acquiring the contents of communications"). And yet, *McCann* holds that it "was not necessary to recite in the indictment that the interceptions were made without consent." 465 F.2d at 162. Whatever reasonable policy arguments that Burke offers, none of them can trump statutory structure and precedent.

Burke next relies on *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006), a civil case, to inform his criminal indictment. *See* MTD at 12–13; Burke Suppl Br. at 4–5. In *Snow*, the Eleventh Circuit concluded that § 2511(2)(g)(i)'s "readily accessible" exception is an "element" of a "valid civil complaint" under the Stored Communications Act (SCA). 450 F.3d at 1321; *see id.* at 1321 ("[T]he requirement that the electronic communication not be readily accessible by the general public is material and essential to recovery under the SCA."). In reaching this conclusion, the Eleventh Circuit relied on statements from individual legislators[3] about the exception and explained that, given the Internet's "ubiquitous and public nature, it

---

[3] With respect to § 2511(2)(g)(i), the Eleventh Circuit referenced two statements made about a precursor bill to the Electronic Communications Privacy Act of 1986. *See* 131 CONG. REC. S11799 (daily ed. Sept. 19, 1985) (statement of Sen. Leahy) ("The bill also provides several clear exceptions to the bar on interception so as to leave unaffected electronic communication made through an electronic communication system designed so that such communication is readily available to the public."); 131 CONG. REC. E4128 (daily ed. Sept. 19, 1985) (Statement of Rep. Kastenmeier) (same).

25

becomes increasingly important in cases concerning electronic communications available through the Web for a plaintiff to demonstrate that those communications are not readily accessible." *Id.* at 1320–21. The Eleventh Circuit was concerned about the opening of the "floodgates of litigation" and the prosecution of the "merely curious" that would result if the "readily accessible" exception was not enforced. *Id.* at 1321; *see also* Burke Suppl. Br. at 5 ("[T]his must be an element of the offense, because without it having been plead and proven, the statute puts anyone who clicks on links on the Internet at peril of prosecution."). The Eleventh Circuit therefore affirmed an order dismissing a civil complaint—which alleged that the defendants accessed a website in violation of 18 U.S.C. § 2701(a)—for failing to allege facts from which the court could infer "that the website is not readily accessible to the general public." *Id.* at 1322.

The government recognizes the tension between *Snow* and *McCann*, *see* USA Suppl. Br. at 2, 9 (submitting that *Snow* contradicts *McCann*), but contends that *McCann* controls because it was decided before *Snow. Id.*; *see Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) ("[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls.").

26

I agree with the government that *Snow* and *McCann* pull analytically in different directions and that *McCann* precedes *Snow*. Ultimately, though, *Snow* does not govern a criminal prosecution under § 2511(1)(a) and *McCann* directly does. Regardless of whether as a matter of policy the particular exception in § 2511(2)(g)(i) would be better as an element instead of an affirmative defense, *McCann* rejected the idea that "all the statutory exceptions listed in 18 U.S.C. § 2511" must be recited in the indictment. 465 F.2d at 162. Burke never addresses why one statutory exception—consent—need not be alleged and proven as an element by the government but another—readily accessible—must be. I see no basis in § 2511's language and structure to support that result. There are also potentially good reasons for imposing the burden on a civil plaintiff to negate the readily accessible exception by a preponderance of the evidence while not requiring the government to negate that same exception beyond a reasonable doubt.

In sum, because *McCann* remains binding, § 2511(2)(g)(i)'s "readily accessible" exception for interception of electronic communications is not an element of a criminal offense under § 2511(1)(a).

## 2. § 2510(2)'s Definition of Oral Communication

With respect to the interception of oral communications, Burke argues that the indictment is defective because it fails to allege that both parties to the intercepted conversation had an objectively reasonable expectation of privacy in the conversation. MTD at 9–10; Reply at 1–2; *see* 18 U.S.C. § 2510(2) (defining "oral communication" to mean "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication"); *see also United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993) (asking, in the light of *Katz v. United States*, 389 U.S. 347 (1967), "whether a reasonable or justifiable expectation of privacy exists" to determine whether an "oral communication" exists (quotations omitted)).

This argument fails for two reasons. First, Burke provides no authority for the proposition that an indictment is insufficient if it fails to allege a term's statutory definition. The government, in a case concerning an alleged "oral communication," must prove the existence of an oral communication based on § 2510(2)'s definition, but the definition is not a separate element nor must the indictment allege all particulars of the incorporated definition. *See United States v. Lentz*, 624 F.2d 1280,

1284 (5th Cir. 1980) ("As one of the elements of the government's case under 18 U.S.C. § 2511(1)(a), it had to prove that the telephone conversations at issue were 'wire communications,' which are defined in 18 U.S.C. § 2510." (footnote omitted)). Indeed, in a case concerning a different subsection of § 2511, the Fourth Circuit rejected a challenge based on the indictment's failure to allege "that a justifiable expectation of privacy be exhibited by the participants to the intercepted conversations." *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979). The Fourth Circuit concluded that the "[u]se of the term 'oral communications' and citation to the statute involved sufficiently apprised defendant of this element." *Id.* (footnote omitted). Another district court has reached the same conclusion. *See United States v. Carroll*, 332 F. Supp. 1299, 1302 (D.D.C. 1971) ("By using the term 'oral communication' coupled with the citation of the statute the indictment contains adequate information since the definition of oral communication is incorporated by reference."). I find these cases persuasive and conclude that the indictment here is sufficient for the same reasons.

Second, Burke really contests the sufficiency of the evidence, not the legal elements themselves. Twice in his motion, Burke argues that he did not intercept oral communications "in light of the facts of this case." MTD at 8; *see id.* at 9–10

("In the case at bar, the participants were in a television studio, facing cameras which were on, wearing lapel microphones, with boom microphones, ready to transmit their conversations worldwide."). I may not dismiss an indictment on such a basis. *See United States v. Salman*, 378 F.3d 1266, 1268 n.5 (11th Cir. 2004) ("[T]here is currently no authority within the Federal Rules of Criminal Procedure for granting a motion to dismiss predicated on the insufficiency of the evidence, whether it be based in fact or law.").

For these reasons, Burke's motion with respect to Counts Eight through Twelve is denied.

### C. Legal Sufficiency of Counts Two through Seven

Whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer" violates 18 U.S.C. § 1030(a)(2)(C). In this section, Congress prohibited two distinct acts: "intentionally access[ing] a computer without authorization" and obtaining information from a protected computer and "exceed[ing] authorized access" on a computer and obtaining information from a protected computer. Counts Two through Seven charge the first method of violating § 1030(a)(2)(C).

30

The indictment includes three groups of allegations under § 1030(a)(2)(C). First, the grand jury found probable cause that Burke "intentionally accessed a protected computer," "namely, the NSL FTP server, without authorization, and thereby obtained information from that protected computer." Indictment at 17–18 (Counts Two and Three) (citing 18 U.S.C. § 1030(a)(2)(C) and (c)(2), and 18 U.S.C. § 2). The indictment includes the information that Burke allegedly obtained. *Id.* at 18.

Second, the grand jury found probable cause that Burke "intentionally accessed a protected computer," "namely, the StreamCo-Net, without authorization, and thereby obtained information from that protected computer." Indictment at 18–19 (Count Four). This unauthorized access was "in furtherance of a criminal act[s]," in violation of 18 U.S.C. § 2511(1)(a), 18 U.S.C. § 2511(1)(c), and for the purpose of commercial advantage and private gain. *Id.* (citing 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), and 18 U.S.C. § 2). The indictment includes the information that Burke allegedly obtained. *Id.*

Third, the grand jury found probable cause that Burke "intentionally accessed a protected computer," "namely, the StreamCo-Net, without authorization, and thereby obtained information from that protected computer." Indictment at 19–20

(Counts Five through Seven) (citing 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(ii), and 18 U.S.C. § 2). This unauthorized access was "in furtherance of a criminal act, in violation of 18 U.S.C. § 2511(1)(a)." *Id.* Like with the other counts, the indictment includes the information that Burke allegedly obtained. *Id.* at 20.

Burke argues that these counts fail because he had authorization to access the protected computers. MTD at 13–23. Relying on *Van Buren v. United States*, 593 U.S. 374 (2021), Burke argues that § 1030(a)(2)(C) must be read narrowly to criminalize only "hacking." *Id.* at 18; *see also* Reply at 6.

Burke's arguments lack merit. Counts Two through Seven "allege each of the elements of the [relevant] statute." *Plummer*, 221 F.3d at 1302. With respect to authorization, the indictment alleges that Burke obtained information found on the victims' computers without securing "any authorization" from the NSL, StreamCo, and Network #2. Indictment (Count One) ¶ 22f; *see, e.g.*, *id.* ¶ 22c (alleging that Burke "secure[d], share[d], and save[d] credentials found or otherwise obtained that enabled access to protected computers owned or used by the [victims] without having been authorized to possess or share said compromised credentials by the [victims or associated individuals to whom those credentials had been issued]"); *id.* ¶ 22d (alleging that Burke "repeatedly utilize[d] the compromised credentials to

gain unauthorized access to the [victims'] computers"); *id.* ¶ 23e (alleging that Burke "used compromised [Network #2] credentials to gain unauthorized access" to "StreamCo-Net").

To combat the sufficiency of these allegations, Burke turns to extra-indictment facts to argue that the government's legal theory is invalid. *See, e.g.*, MTD at 13–14, 17–18, 18 n.19. None of these factual disputes may be considered in determining whether to dismiss the indictment. *See Critzer*, 951 F.2d at 307 (evaluating the sufficiency of an indictment "from its face"). Because the government properly alleged six violations of § 1030(a)(2)(C), "the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Salman*, 378 F.3d at 1268. A "ruling on the merits" of the § 1030(a)(2)(C) counts is improper. *Id.* at 1267.

Nor does Burke's *Van Buren* argument change the analysis. *Van Buren* concerned a circuit split over the meaning of § 1030(a)(2)'s second clause, which prohibits "exceed[ing] authorized access" on a computer. 593 U.S. at 381; *see id.* at 396 (holding that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him").

33

*Van Buren* did not address the first clause prohibiting access "without authorization," (the only clause that the indictment charges Burke with violating), and *Van Buren* did not hold that "that 'downloading without authorization' is not a violation of the CFAA," MTD at 17–18. Because *Van Buren*'s holding concerns § 1030(a)(2)'s second clause and Burke is charged under § 1030(a)(2)'s first clause, *Van Buren* does not provide a basis for dismissing Counts Two through Seven.

### D. Sufficiency of Count I's Conspiracy Allegations

Lastly, Burke moves to dismiss Count One, which alleges that Burke conspired with another to commit the substantive offenses charged in the indictment, in violation of 18 U.S.C. § 371. Indictment at 1–17. That provision penalizes "[i]f two or more persons conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371.

The elements of "a conspiracy under 18 U.S.C. § 371 are (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The indictment alleges all three. *See* Indictment at 1–17. Burke appears

to attack the first element but concedes that he communicated with his alleged co-conspirator on Twitter. *See* MTD at 23. In any case, the indictment alleges that Burke "agree[d]" with his co-conspirator to commit the substantive offenses. Indictment (Count One) ¶ 21. Burke's other argument is that the indictment alleges a conspiracy to achieve a lawful objective rather than an unlawful one. MTD at 23 ("[T]he charge amounts to a 'conspiracy to run a green light.'"). That argument repackages his objections to the substantive offenses, which I have already concluded fail at this stage of the criminal proceedings. Moreover, the conspiracy count itself adequately alleges unlawful objectives. *See* Indictment (Count One) ¶ 21. Thus, Count One survives.

## IV. CONCLUSION

Accordingly, Burke's Motion to Dismiss (Doc. 64) is **DENIED**.

**ORDERED** in Tampa, Florida, on April 14, 2025.

Kathryn Kimball Mizelle
United States District Judge